(No. 21546.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ALEXANDER RICE, Plaintiff in Error.

*Opinion filed February 23, 1933—Rehearing denied April 5, 1933.*

FRANK A. McDONNELL, and S. B. McDONNELL, Jr., (ELWYN E. LONG, of counsel,) for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, and GRENVILLE BEARDSLEY, of counsel,) for the People.

Mr. Justice Orr delivered the opinion of the court:

Alexander Rice was in January, 1932, found guilty by a jury in the criminal court of Cook county of manslaughter and sentenced to the penitentiary for from one to fourteen years, as provided by statute. To review that judgment and sentence he has sued out this writ of error and seeks reversal on two grounds: First, because he was not given a continuance when he requested it; and second, because the evidence, he claims, does not show him guilty beyond a reasonable doubt.

Rice's conviction resulted from the killing of Felix Mercsanits on August 12, 1931. The two men had had an altercation over the alleged ill-treatment by Felix of an eight-year-old daughter of Rice. Felix lived at home with his father and assisted him as janitor for several apartment buildings, and Rice lived in an adjoining apartment building. When Rice returned from work about five o'clock in the afternoon his wife complained to him that the child had been struck by one of the janitors. Rice immediately went to the Mercsanits home, where several janitors were usually to be found together, to find the man who had abused his daughter. No one was found at the house and Rice returned to his own home, following which he and his family went out for dinner. Afterwards Rice took his daughter to a physician and had her examined. This examination showed that her lips and tongue were slightly lacerated and that she had some bruises upon her body. The family returned home about 8:30 that evening, August 12. Rice again went to the Mercsanits home, taking with him a Colt automatic pistol. Before leaving the house with the weapon he removed the magazine from the gun, leaving it on the kitchen table. He insisted that he took the pistol for his own protection, as he believed that a man who had abused a child would be a desperate character. He said he had no intent to use the gun except as a club or to scare the deceased. He testified that he knew little about guns

in general and less about the manipulation of an automatic pistol. He had been in the army during the World War but was not acquainted with the use of fire-arms, as he had been a cook in an aviation camp. Upon his second visit Rice met Frank Wagner, who denied knowing anything about the child's injuries. A second man came to the door who likewise denied knowing anything about the affair, and this second man was Felix Mercsanits. Rice went back home and again returned with his wife and two children, as he wanted them to identify the man who had struck his child. Upon seeing the same two men Rice demanded to know which one was Felix. In response to this demand Felix replied that he was the man. Rice and Felix then became engaged in a heated argument over the child. While so engaged Felix faced the doorway of the kitchen entrance and Rice was standing in the partially opened doorway, with the partly shut screen door at his back. According to Rice's story Felix admitted striking the child and threatened to do so again. Rice said that Felix then made a charge toward him as if he were going to attack him, and that thereupon he (Rice) drew his pistol with the intention of scaring Felix. The latter, according to Rice, then attempted to close the kitchen door, and the closing door struck the pistol, breaking the glass door-panel and causing the pistol to discharge itself while in Rice's hand. Felix was shot and mortally wounded. Rice returned home with his family and called the police and then returned to the home of the wounded man in an effort to render first aid.

R. P. Close, a neighbor, saw Rice and his family approach the kitchen door of Felix's home and heard them quarreling with someone within the house. He testified that the kitchen door was closed after the quarreling and immediately a crash of glass and a shot were heard, with no appreciable difference in time between the two noises. A sister of this witness testified that she heard the noise of a shot and then the crash of glass. Edward Scott saw a

man approach the door of decedent's cottage, saw this man's hand come up, heard the report of a gun and the crash of glass. Gladys Cobb saw Rice and his family at Felix's home and her attention was attracted by loud talking. She did not hear a shot—just heard the breaking of glass. George Cobb saw Rice make two visits to the Mercsanits home. The second time he had his boy and girl with him. Upon hearing the breaking of glass he turned and saw Rice standing on the steps outside the door. This witness did not see or hear the shooting. Robert Schollenberger, an eleven-year-old boy, witnessed the last two visits of Rice to the home of Felix. On the last visit Rice had a gun in his hand, and the boy said that after Rice had called Felix names and dared him to come out, Felix shut the door and Rice went up and shot through the door. Frank Wagner, an Austrian, who testified through an interpreter, was with Felix when Rice appeared and started the quarrel. Wagner testified that he saw Rice shoot Felix, who did not want to fight, but, on the contrary, closed the door between the two in an attempt to avoid trouble. According to Wagner, Rice thereupon left but returned shortly afterwards to the door and resumed the altercation with Felix. Wagner stated that Felix again closed the door and told Rice to return to his own yard. Thereupon, according to Wagner, Rice was "hollering for the door, and Felix he tried to go in the bath-room; he tried to go out and he (Rice) shot him." This witness contradicted himself several times, but his testimony on two vital points remained unshaken— i. e., that he had seen Rice shoot Felix, and that the fatal shot was fired after Felix had closed the door.

The absence of the physician who examined the daughter of Rice and the refusal of the trial court to grant a continuance in order to permit him to testify is argued as reversible error. In this connection Rice argues that he had complied with all the legal requirements necessary to establish his right to a continuance. In reply, however, the State

claims that the defendant failed to establish the materiality of the evidence which the absent physician would have given had the case been continued. The record shows that the child was playing upon property that the deceased was connected with and that he slapped her, causing her to fall and sustain some slight bruises upon her body. The absent medical witness, had he been present, could only have testified as to the nature and extent of the bruises on the child. Rice was allowed to testify, without objection by the State, concerning the nature and extent of these bruises. He had been present when the doctor examined his daughter. From the affidavit filed by Rice in support of his motion, the doctor would have been called upon to testify, in substance, the same as Rice testified. The testimony which the doctor was said to be able to give contained no new evidence, was merely corroborative, and corroborative only upon matters which the State did not dispute. The doctor was not present at the shooting. He had examined the child prior to the shooting and knew nothing about why or how the child was struck by the deceased except what he learned from the child and its father. One of the prime requisites for granting a continuance on the ground that a material witness is absent is that the materiality of the testimony of the proposed witness must be shown. (Smith's Stat. 1931, chap. 38, par. 738.) No such materiality was shown here, as the fact that the child had received certain bruises and cuts upon her body was not disputed. The trial court did not err in refusing to grant the motion for a continuance.

The attempt of Rice to show that the killing of Felix was an accident or a misadventure is not satisfactorily borne out by the evidence. Neither is there any evidence which would justify us in believing that the deceased had taken indecent liberties with Rice's daughter or that Rice himself believed that the deceased had attempted to take such liberties, because, as Rice testified, the girl had merely

said that the deceased slapped her and she fell off a banister and hurt herself. The explanation by Rice that he had armed himself with a pistol only for the purpose of self-protection, when compared with his statement that he was ignorant about the use of such a weapon and that he expected to use it solely as a club, is incredible. The defense of misadventure was submitted to the jury, who heard and saw the witnesses and by their verdict concluded that such defense was without merit.

Manslaughter is the killing of a person without malice, express or implied. The killing must be done without deliberation, but must be either voluntarily or involuntarily done. In voluntary manslaughter, while malice is not a factor, there must be some provocation which is apparently strong enough to make the passion to kill irresistible. (*People* v. *Crenshaw*, 298 Ill. 412.) The evidence here proved the defendant guilty of the crime of manslaughter beyond all reasonable doubt. A reasonable interpretation of all the evidence produced upon the trial would lead to the belief that while Rice harbored no malice against the deceased, yet the slapping of his child was provocation enough to engender a dangerous passion to kill, which the subsequent quarrel between the two men raised to such a pitch as to be irresistible. Rice had previously supplied himself with a pistol, and the carrying of this deadly weapon with him on his visit to the premises of the deceased was deliberately and intentionally done. Under the evidence the jury were fully warranted in finding the defendant guilty of manslaughter.

No other errors are briefed and argued by the defendant, and inasmuch as the two errors argued are without merit, the judgment of the trial court is affirmed.

*Judgment affirmed.*