**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Ernest P. SUAZO, Defendant–Appellant.**

No. 92CA0183.

Colorado Court of Appeals, Div. V.

Nov. 18, 1993.

Rehearing Denied Dec. 16, 1993.

162

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Greg P. Beacom, Sp. Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Kathleen A. Lord, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge DAVIDSON.

Defendant, Ernest P. Suazo, appeals from a judgment of conviction entered upon a jury verdict finding him guilty of third degree assault on the elderly. We vacate the conviction and remand with instructions.

Early one morning, the victim was involved in an altercation at his place of employment. The incident began after a verbal confrontation between the victim and a woman employee escalated into physical violence. According to witnesses, the victim hit the woman, knocked her down, and pulled her hair. When a second employee, defendant's mother, attempted to pull the victim away, she was struck several times.

As a result of the ruckus raised by the incident, other employees came to investigate. Several employees attempted to subdue the victim, who at that point began running around the plant in a frantic manner.

Defendant, who was also employed at the plant, arrived on the scene and saw that his mother was in a highly distressed state. She then told him that the victim had hit her twice across the back of the neck.

Defendant testified that he was very upset by this but that he attempted to disguise his agitation while in the presence of his mother. He confronted the victim immediately after the incident, but other co-workers told him to "leave it be" and that "everything was taken care of."

The victim, who claimed to have been injured during the fracas, was directed by plant management to go to a nearby clinic for treatment and examination. A co-worker was asked to drive the victim to the clinic. After arriving at the clinic, but before the victim was able to exit the car completely, defendant approached the victim and struck him. The victim sustained facial cuts and bruises.

Because the victim was sixty years old at the time of the incident, defendant was charged with third degree assault on the elderly pursuant to § 18–3–209(3), C.R.S. (1986 Repl. Vol. 8B).

At trial, defendant requested a jury instruction on provocation. The trial court found that the evidence as presented would support a jury finding of provocation. However, it refused to instruct the jury on the issue because, although applicable by statute to a charge of second degree assault on the elderly, provocation has not been made applicable to third degree assault on the elderly. The jury returned a verdict of guilty.

Under the versions of the statutes applicable here, second degree assault on the elderly with provocation is a class 1 misdemeanor while third degree assault on the elderly is a class 5 felony. Expressing concern that provocation is inapplicable to third degree assault on the elderly and yet the penalty for that offense is greater than that for second degree assault on the elderly with provocation, the trial court entered a judgment of conviction for a class 5 felony but only sentenced defendant to a term of probation within the misdemeanor range.

## I.

Defendant first argues that, as applied here, the assault on the elderly statute violates his right to equal protection. We agree.

## A.

Our supreme court has recognized that the General Assembly is entitled to provide for different and more severe penalties for different crimes, so long as the classification of crimes reflects substantial differences in the conduct proscribed which have a reasonable relationship to the public purposes sought to be achieved. If, however, as a result of a particular statutory scheme, an offender who acts with less culpable intent and causes a less grievous result is afforded a greater penalty, then the statute involved may violate constitutional principles of equal treatment under the law. *People v. Montoya*, 196 Colo. 111, 582 P.2d 673 (1978).

Because the offenses implicated here are different and therefore persons charged under them are not "similarly situated," the issue presented does not fall under traditional concepts of equal protection. *See People v. Marcy*, 628 P.2d 69 (Colo.1981). However, irrational classifications may be nonetheless violative of fundamental constitutional principles if the penalty prescribed is not rationally related to the recognized legislative objective of establishing "more severe penalties for acts which it believes have greater social impact and more grave consequences." *People v. Montoya, supra*, 196 Colo. at 113, 582 P.2d at 675; *see also Smith v. People*, 852 P.2d 420 (Colo.1993) (even though the two different acts result in the same magnitude of harm, because the actor who behaves with less culpability receives greater punishment, the statutory scheme creates an irrational classification and is therefore constitutionally infirm).

Section 18–3–209, C.R.S. (1986 Repl. Vol. 8B), as applicable here, provides that:

(1) A person who commits second or third degree assault and the victim is a person who is sixty years of age or older ... commits assault on the elderly....

(2) If the assault on the elderly ... is second degree assault and is committed without the circumstances provided in section 18–3–203(2)(a) being present, it is a class 3 felony....

(3) If the assault on the elderly ... is third degree assault, it is a class 5 felony.

According to the second degree assault statute, as then in effect, § 18–3–203(2)(a), C.R.S. (1986 Repl. Vol. 8B):

If assault in the second degree is committed under circumstances where the act causing the injury is performed, not after deliberation, upon a sudden heat of passion, caused by a serious and highly provoking act of the intended victim, affecting the person causing the injury sufficiently to excite an irresistible passion in a reasonable person, it is a class 1 misdemeanor.

■ The presence of provocation is a mitigating factor which reduces the penalty for first or second degree assault. *See Rowe v. People,* 856 P.2d 486 (Colo.1993); *People v. Pennese,* 830 P.2d 1085 (Colo.App.1991). A defendant is entitled to have the jury determine the presence of provocation by special interrogatory if evidence has been presented which would support such a finding. *People v. Brighi,* 755 P.2d 1218 (Colo.1988); *People v. Reedy,* 705 P.2d 1032 (Colo.App.1985).

Under the Colorado assault statutes, as they pertain to the facts of this case, a person is guilty of third degree assault if he or she "knowingly or recklessly causes bodily injury to another person." Section 18–3–204, C.R.S. (1986 Repl. Vol. 8B). As pertinent here, a person is guilty of second degree assault if he or she "with intent to cause serious bodily injury to another person," does cause such injury, § 18–3–203(1)(a), C.R.S. (1986 Repl. Vol. 8B) or "with intent to cause bodily injury to another person, he causes serious bodily injury to that person or another." Section 18–3–203(1)(g), C.R.S. (1986 Repl. Vol. 8B).·

■ "Knowingly or recklessly" is a lesser degree of mental culpability than "with in-tent." *People v. Bramlett,* 194 Colo. 205, 573 P.2d 94 (1977); *see also People v. Derrera,* 667 P.2d 1363, 1367 (Colo.1983) ("Under the Colorado Criminal Code, 'knowingly' is the second highest level of criminal culpability."); *People v. Wheatley,* 805 P.2d 1148 (Colo.App. 1990) (intent to cause bodily injury represents a higher *mens rea* than recklessness); *People v. Lucero,* 714 P.2d 498 (Colo.App. 1985) (The culpable mental state required for first degree assault (intent to cause serious bodily injury) is sufficiently distinguishable from that required for criminally negligent homicide (knowingly) so as to justify a harsher penalty for the former).

■ "Bodily injury" is a less serious degree of injury than "serious bodily injury." *People· v. Brown,* 677 P.2d 406 (Colo.App. 1983); *see also People v. Thompson,* 187 Colo. 252, 529 P.2d 1314 (1975). And, the gravity of injury sustained, or even intended, can be a sufficient distinction to justify differing penalties. *People v. Lucero, supra; see also People v. Montoya, supra* (intent to cause death is a more culpable mental state than intent to cause serious bodily injury); *Smith v. People, supra* (intent to cause serious bodily injury is a more culpable mental state than intent to cause bodily injury).

■ As a result of the operation of § 18–3–209, however, a person who commits second degree assault on the elderly with provocation would be convicted of a class one misdemeanor, while a person who, also with provocation, commits third degree assault on the elderly—and thus who has acted less culpably and has caused less harm—would be convicted of a class 5 felony. This legislative scheme allows an irrational classification to occur. *See People v. Montoya, supra,* and *Smith v. People, supra.*

Furthermore, we note that, under the versions relevant here, as the assault statutes are applied when the victim is not 60 years of age or older, provocation serves to reduce the penalty for second degree assault to the same level as that prescribed for third degree assault. *See* §§ 18–3–203(2)(a) and 18–3–204, C.R.S. (1986 Repl. Vol. 8B). This may represent a legislative judgment that these two offenses are deserving of comparable

punishment. *See People v. Aragon,* 653 P.2d 715 (Colo.1982). When the victim is 60 years of age or older, however, the statute functions, with no discernable rational basis, to increase the penalty only for less culpable conduct resulting in less harm even though both are committed under provocation. *See Smith v. People, supra.*

In defense of this statutory scheme as applied here, the People do not dispute that the harm caused by second degree assault (serious bodily injury) is greater than the harm caused by third degree assault (bodily injury). They do challenge, however, the premise that the level of mental culpability for second degree assault with provocation is greater than that for third degree assault. In their view, the existence of provocation serves to reduce the *mens rea* of the offense, so that a person who "knowingly or recklessly" causes injury is more mentally culpable than a person who "intentionally" but with provocation, causes greater injury. Implicit in the People's argument is also the assumption that provocation is already "included" in the *mens rea* of "knowingly or recklessly."

Based on these premises, they conclude that, because it is the General Assembly's prerogative to fashion different penalties for different crimes, there is no constitutional infirmity here. We reject this analysis.

■ The doctrine of provocation, also referred to as "heat of passion," was first applied to homicide crimes to acknowledge that because of the frailties of human nature, some violent acts occur after an understandable loss of normal self-control. *See Henwood v. People,* 54 Colo. 188, 129 P. 1010 (1913). Heat of passion, as it pertains to the crime of assault, however, is neither a culpable mental state nor part of a culpable mental state. Contrary to the People's contention, provocation does not "reduce" the *mens rea* of second degree assault. Although the existence of provocation operates to lessen the consequences of an assault conviction, it does not affect the *mens rea* element of that offense. *See Rowe v. People, supra. See also* § 18–1–501(4), C.R.S. (1986 Repl. Vol. 8B) (listing culpable mental states).

In *Rowe,* the supreme court addressed the relationship of heat of passion to the crime of assault and noted that, while the General Assembly could have, *inter alia,* created a separate offense of "assault committed in the heat of passion" or could have established heat of passion as an affirmative defense, instead it chose to "maintain the offense" of assault and to establish a statutory mitigating factor of heat of passion. "In the Senate Judiciary Committee hearing . . . the drafter of the [heat of passion] amendment repeatedly stressed that 'all we are doing is changing the penalty, we are not changing the elements of the [offense].'" *Rowe v. People, supra,* 856 P.2d at 490.

Thus, provocation, as it relates to the crime of assault, presupposes the required mental state, but provides that the circumstances involved may nonetheless reduce the severity of the penalty attached to the offense. In this respect, the treatment of provocation in the context of assault differs from provocation in homicide, in which the General Assembly has designated heat of passion manslaughter as an entirely separate offense from that of murder. *See Rowe v. People, supra;* § 18–3–104, C.R.S. (1986 Repl. Vol. 8B); and *compare COLJI–Crim.* No. 10:20 (1983) (the jury does not consider the issue of provocation until it has determined that the defendant is guilty of assault) *with COLJI–Crim.* No. 9:08 (1983) (provocation is an element of manslaughter). *See also* M. Wesson, *Crimes & Defenses in Colorado* 139 (1989) (provocation more closely resembles a "confession and avoidance" defense such as self-defense or duress, than an "element negating" defense such as impaired mental condition or intoxication); and *cf. People v. Ledman,* 622 P.2d 534 (Colo.1981) (impaired mental condition applies when the defendant lacks the capacity to form the requisite intent).

For similar reasons, we also reject the People's assumption that the General Assembly has deliberately excluded provocation as a statutory mitigating factor to third degree assault because "heat of passion" is already included within "knowingly or recklessly," thereby rendering provocation inapplicable to forms of third degree assault requiring that *mens rea.* As we have stated, heat of passion is not, and does not affect, the culpable

mental state required for the crime of assault. *Cf. Rowe v. People, supra.* Therefore, heat of passion cannot conceptually be "included" within the *mens rea* of knowingly or recklessly. *Compare* § 18–3–103(1)(a), C.R.S. (1986 Repl. Vol. 8B) (second degree murder committed *knowingly,* but not *after deliberation*) *with* § 18–3–104(1)(c), C.R.S. (1986 Repl. Vol. 8B) (heat of passion manslaughter committed *knowingly,* but under circumstances where the act causing the death *was performed upon a sudden heat of passion* ); *see also Sanchez v. People,* 820 P.2d 1103 (Colo.1991); *cf.* § 18–3–203(1)(d), C.R.S. (1986 Repl. Vol. 8B) (because it applies to all forms of second degree assault, heat of passion serves to reduce the penalty for recklessly causing serious bodily injury by means of a deadly weapon).

Accordingly, we reject the People's assertions and conclude that the level of mental culpability, as well as the severity of the injury inflicted in this case, is less for third degree assault on the elderly than it is for second degree assault on the elderly committed in the heat of passion. Therefore, the statutory scheme for assault as it is applied here allows a more severe degree of conviction and punishment to be based on a lesser degree of mental culpability and determined by the fortuity of having caused less serious harm to the victim. This is untenable and "contrary to common sense." *See Smith v. People, supra,* 852 P.2d at 422.

### B.

Nonetheless, the People argue, any inequities in the statutory scheme are irrelevant here because the trial court erred in determining that the evidence would support a finding of provocation. Specifically, because defendant did not witness the attack on his mother and because the attack on the victim occurred approximately fifteen minutes after the hostilities at the plant had ceased, the People contend that no provocation could have occurred. We disagree.

### 1.

■ A physical attack upon a close relative is the type of act which typically can be expected to excite a profoundly passionate response which may include reacting physically against the attacker. *See People v. Thompson, supra; L.J.E. v. State,* 384 So.2d 981 (Fla.App.1980); *Jenkins v. State,* 123 Ga. 523, 51 S.E. 598 (1905). Viewing, or learning of, an injury to a close relative may create a jury question as to provocation in cases of manslaughter. *See People v. Rice,* 351 Ill. 604, 184 N.E. 894 (1933) (victim struck defendant's daughter); *State v. Grugin,* 147 Mo. 39, 47 S.W. 1058 (1898) (defendant learned that the victim had sexually assaulted defendant's daughter); *State v. Flory,* 40 Wyo. 184, 276 P. 458 (1929) (defendant learned that the victim had incestuously raped defendant's wife).

■ Here, the trial court correctly noted that the evidence was sufficient to allow the jury to find that the attack on the victim had been the result of an irresistible passion in defendant induced by arriving at the scene of the melee at the plant in time to observe his mother in a highly distraught state because of the blows she claimed were inflicted by the victim. Although the victim testified that he had not physically attacked anyone, and that, in fact, defendant's mother had struck him, inasmuch as the evidence of provocation is in conflict, it is a question for the jury to decide. *See Qureshi v. District Court,* 727 P.2d 45 (Colo.1986); *Walker v. People,* 175 Colo. 173, 489 P.2d 584 (1971).

### 2.

■ Furthermore, we also reject the People's argument that a significant interval between the provoking act and the assault precluded a finding of heat of passion as a matter of law.

In the context of homicide, in order to establish provocation, the provoking act must be relatively near in time to the assault. *See* § 18–3–104(1)(c) (defining heat of passion manslaughter). If a long enough interval has passed for the "voice of reason and humanity to be heard," provocation is not applicable. *Coston v. People,* 633 P.2d 470 (Colo.1981); *COLJI–Crim.* No. 9:08 (1983).

In the context of assault, however, neither the statutes nor the pattern jury instructions require the jury to determine if an insuffi-

cient interval has passed "for the voice of reason and humanity to be heard." *See COLJI–Crim.* No 10:20 (1983); § 18–3–203(2)(a). Despite the legislative determination to pattern the statutory mitigator of provocation conceptually after heat of passion manslaughter, the General Assembly has chosen explicitly to omit the interval requirement from the assault statute.

We further note that a trial court may find the interval was sufficient to negate provocation as a matter of law only if the evidence is undisputed that the interval is relatively long and reasonable minds could not disagree that an adequate "cooling off" period occurred; otherwise the question must be submitted to the jury. *People v. Cornelison,* 44 Colo.App. 283, 616 P.2d 173 (1980); *see also English v. People,* 178 Colo. 325, 497 P.2d 691 (1972). This is not the situation here.

Instead, the assault in this case occurred only approximately fifteen minutes after the provoking act. Even if the insufficient interval requirement was in some manner impliedly applicable in an assault context, defendant was entitled to have the jury review the evidence and determine whether the length of the interval negated the assertion of provocation. *See People v. Cornelison, supra; People v. Maes,* 43 Colo.App. 365, 609 P.2d 1105 (1979).

### 3.

Although the jury made no determination that provocation existed in this case, because defendant introduced some credible evidence that the offense was committed under heat of passion, the burden shifted to the prosecution to demonstrate the nonexistence of this mitigating factor. Accordingly, the absence of a jury determination because of the failure to instruct properly on provocation must operate against the prosecution. *See People v. Harris,* 797 P.2d 816 (Colo.App.1990).

### C.

▇▇▇ Recognizing that as a result of the inequities of the statutory scheme, defendant could not be sentenced constitutionally to a term longer than the maximum allowable for second degree assault on the elderly, the trial court sentenced defendant accordingly.

The conviction was entered as a class 5 felony, however, and because of the differences in consequences flowing from the felony and a misdemeanor conviction, defendant argues that the reduced sentence was an insufficient alleviation and that the conviction should have been entered as a class 1 misdemeanor. We agree.

"There are a significant number of important collateral consequences for a felony conviction beyond that of the sentence imposed." *People v. Lowe,* 660 P.2d 1261, 1269 (Colo. 1983). These collateral consequences are of a more serious nature than those attending a misdemeanor conviction and include, among others, an effect on the ability to possess a firearm, *see People v. Allaire,* 843 P.2d 38 (Colo.App.1992), potential impeachment as a witness, *see* § 13–90–101, C.R.S. (1987 Repl. Vol. 6A), the potential for sentencing as a habitual criminal, *see* § 16–13–101, C.R.S. (1993 Cum.Supp.), as well as intangible effects, such as social disrepute. *See Villafranca v. People,* 194 Colo. 472, 573 P.2d 540 (1978).

Therefore, we conclude that, although the sentence is appropriate, the conviction must be vacated and reinstated as a class 1 misdemeanor. *See People v. Banks,* 655 P.2d 1384 (Colo.App.1982), *aff'd,* 696 P.2d 293 (Colo. 1985); *Villafranca v. People, supra.*

### II.

Defendant also contends that under the evidence presented, he was entitled to a jury instruction on the defense of defense of others. We disagree.

Section 18–1–704, C.R.S. (1986 Repl. Vol. 8B) provides that:

> [A] person is justified in using physical force upon another person in order to defend himself or a third person from what he reasonably believes to be the use or imminent use of unlawful physical force by that other person....

▇▇▇ The existence of an affirmative defense such as self defense or the defense of others is normally a question for the jury to decide. *See Lybarger v. People,* 807 P.2d 570 (Colo.1991). A defendant claiming he acted

in defense of others would therefore be entitled to a jury instruction as to that defense if there is any evidence to support it, even if only the highly improbable testimony of the defendant. *See People v. Fuller,* 781 P.2d 647 (Colo.1989).

However, the statute requires that the use of force be "imminent." The meaning of "imminent," in the context of self defense or defense of others, has not been expressly defined by case law or statute in Colorado. *People v. Yaklich,* 833 P.2d 758 (Colo.App. 1991).

In the choice of evils context, "imminent" has been defined as "near at hand, impending or on the point of happening." *People v. Brandyberry,* 812 P.2d 674, 678 (Colo.App. 1990); *see also* Black's Law Dictionary 676 (5th Ed.1979). "Imminent" has been defined also as meaning "likely to happen without delay," Webster's New World Dictionary 301 (2d College Ed.1984), and as meaning "menacingly near," Webster's Third New International Dictionary 1130.

■ A defense of self defense, or defense of others, is usually allowed when the threat, or perceived threat of injury occurred at or near the time of the acts on which the charge is based. *See People v. Yaklich, supra; see also People v. Saiz,* 660 P.2d 2 (Colo.App. 1982). The defendant must hold a reasonable belief that the appearance of danger, whether real or apparently real, justifies the actions taken. *Beckett v. People,* 800 P.2d 74 (Colo.1990).

■ Here, however, defendant admitted that, at the time he struck the victim, the victim was in the clinic parking lot about to submit to an examination for possible injuries incurred during the fracas that had taken place a few minutes earlier. Defendant testified as follows: "I didn't know if they would fire him or not, so I wanted him to know not to hit my mom and stuff if he was going to leave."

This evidence reveals that defendant knew that the victim was going to be absent from the plant for, at the minimum, the time necessary for the examination at the clinic and that defendant suspected that the victim would be fired and not return to the plant at all. Neither did defendant indicate that he was taking advantage of a lull in some continuing violence to make his defensive moves. Although defendant testified that he was concerned about what might happen if the victim returned to work in the same area of the plant as his mother, the evidence, although supportive of a claim of provocation, does not support a claim that he reasonably believed that further violence towards his mother was, under any definition, "imminent." *See People v. Smith,* 848 P.2d 365 (Colo.1993); *People v. Williams,* 827 P.2d 612 (Colo.App. 1992).

Moreover, the record indicates that defendant did not testify that he struck the victim in order to protect his mother. Defendant testified instead that before striking the victim he was not thinking about what he was doing and that after striking the victim he told him: "Next time be sure who you hit."

■ Reasonable belief that one is defending against the use of unlawful force is the touchstone of self defense and thus of defense of others. *See People v. Jones,* 675 P.2d 9 (Colo.1984). Before the question may go to the jury, however, there must be evidence from which the jury could determine that the defendant held such a reasonable belief. *See People v. Smith,* 754 P.2d 1168 (Colo.1988). Because such evidence was lacking here, we agree with the trial court that defendant was not entitled to a jury instruction on the defense of defense of others.

### III.

■ Defendant's last contention is that the trial court erred by not instructing the jury that it would have to find that defendant knew the victim was 60 years of age or older before it could find him guilty of third degree assault on the elderly. We disagree.

Section 18–3–209 does not contain a *mens rea* requirement. Defendant argues that due process requires the *mens rea* of the underlying offense be extended to the offense of assault on the elderly, or that the court imply a *mens rea* requirement of "knowingly."

Section 18–1–503(2), C.R.S. (1986 Repl.Vol. 8B) provides that if a statute does not contain a culpable mental state, one must be implied "if the proscribed conduct necessarily involves such a culpable mental state." Section 18–1–502, C.R.S. (1986 Repl.Vol. 8B) provides that if "an offense or some material element thereof does not require a culpable mental state on the part of the actor, the offense is one of 'strict liability'."

The plain language of the assault on the elderly statute convinces us that the offense was meant to be a strict liability offense. According to § 18–3–209(1), the elements of third degree assault on the elderly are: 1) that the defendant committed third degree assault *and* 2) that the victim is a person who is sixty years of age or older. *See also COLJI–Crim.* No. 10:21 (1993 Supp.). In order to be found guilty of third degree assault on the elderly, the defendant must first be found to have committed a third degree assault. The age of the victim then changes this offense into one of a higher grade.

In this respect, the element of the victim's age functions similarly to the element of the value of the thing taken in the theft statute. *See* § 18–4–401(2), C.R.S. (1986 Repl.Vol. 8B). The value of the thing taken is a matter of strict liability because it depends upon objective criteria, not upon its value in the mind of the defendant. *See* W. LaFave and A. Scott, *Criminal Law* 635 (1972). Therefore, the jury is not required to find that the defendant had any level of awareness of the actual value of the stolen items. *See COLJI–Crim.* No. 16:01 (1983); *see also People v. Cowden*, 735 P.2d 199 (Colo.1987) (the grade of theft is determined by the value of the items taken, not by the *mens rea* of the defendant).

Additionally, when the victim's age is a part of the offense, the General Assembly has the prerogative to determine if a reasonable mistake of age shall be a defense to the crime, and under what circumstances, or if the defendant will be held strictly liable. *People v. Green*, 183 Colo. 25, 514 P.2d 769 (1973); *see also People v. Grenemyer*, 745 P.2d 1027 (Colo.1987); *Efsiever v. People*, 105 Colo. 88, 96 P.2d 8 (1939). *Compare*

§ 18–3–406(1), C.R.S. (1986 Repl.Vol. 8B) (In the context of sexual assault, "[i]f the criminality of conduct depends on a child's being below the age of eighteen and the child was in fact at least fifteen years of age, it shall be an affirmative defense that the defendant reasonably believed the child to be eighteen years of age or older.") *with* § 18–3–406(2), C.R.S. (1986 Repl.Vol. 8B) (In the context of sexual assault, "[i]f the criminality of conduct depends upon a child being below the age of fifteen, it shall be no defense that the defendant did not know the child's age or that he reasonably believed the child to be fifteen years of age or older.").

The General Assembly has not provided for any reasonable mistake of age as a defense to assault on the elderly. Thus, we conclude that it was not error for the trial court to refuse to instruct the jury that the defendant must have known the victim was 60 years of age. *Cf. People v. Castro*, 657 P.2d 932 (Colo.1983) (because it was apparent that first degree assault was not meant to be a strict liability crime, the *mens rea* of "knowingly" was implied).

## IV.

Because of our resolution of these issues, it is unnecessary to address the parties' other contentions.

The judgment of conviction is vacated, and the cause is remanded to the trial court with instructions to reinstate the conviction as a class 1 misdemeanor.

JONES and MARQUEZ, JJ., concur.