The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Jamie L. DAVIS, Defendant–Appellant.

No. 94CA1132.

Colorado Court of Appeals,
Div. I.

July 11, 1996.

Rehearing Denied Aug. 8, 1996.

Certiorari Denied April 7, 1997.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Miles Madorin, Special Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Andrew C. Heher, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge METZGER.

Defendant, Jamie L. Davis, appeals the judgment of conviction entered on a jury verdict finding him guilty of robbery of an at-risk adult. He also appeals the sentence imposed. We affirm.

The facts in this case are not in dispute. On November 19, 1993, the 68–year–old victim was walking away from a shopping mall carrying some paint she had purchased. She carried a purse by a strap looped over her left arm between her elbow and wrist. Defendant followed her surreptitiously until he was directly behind her. Then, he grabbed the purse and, with a quick jerking motion, caused the strap to break. The victim testified that she had felt a "very slight" tug as the strap broke. Defendant then ran away with the purse, but was later stopped by a passerby.

## I.

Defendant first contends that the trial court erred in refusing to grant a mistrial based on his allegations that the prosecutor had used a peremptory challenge to excuse a prospective juror based on racial motives. We are not persuaded.

■ In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court established a three-part test to determine when a prosecutor's use of a peremptory challenge violates the Equal Protection Clause. First, the defendant is required to make a *prima facie* showing that the prosecution has excluded a prospective juror on account of race. Second, if a *prima facie* case has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for excluding the juror in question. Third, if the prosecutor demonstrates a race-neutral explanation, then the trial court must determine whether the defendant has proved that the prosecutor purposefully discriminated on racial grounds. *People v. Cerrone*, 854 P.2d 178 (Colo.1993); *see also Her-*

*nandez v. New York*, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991).

## A.

■ If, after the defendant attempts to make a *prima facie* case of racial discrimination, the prosecutor offers a race-neutral explanation for the peremptory challenge and the trial court rules on the ultimate question of intentional discrimination, the preliminary question whether defendant had made a *prima facie* showing of racial discrimination becomes moot. *Hernandez v. New York, supra; People v. Arrington*, 843 P.2d 62 (Colo. App.1992).

Here, after defendant objected to the prosecutor's use of a peremptory challenge to unseat an African–American from the venire, the trial court allowed defendant to attempt to establish a *prima facie* case of unlawful discrimination. Then, before ruling on whether defendant had succeeded, the trial court allowed the prosecutor to respond. In his response, the prosecutor argued that there was a non-racial justification for the challenge. After allowing defendant to rebut the prosecutor's argument, the trial court ruled that defendant had failed to make a *prima facie* case, and that the prosecutor had demonstrated a non-racial justification for the peremptory challenge.

Thus, the question whether defendant had established a *prima facie* case was rendered moot under these circumstances. *See Hernandez v. New York, supra; People v. Arrington, supra.*

## B.

■ If the defendant succeeds in making a *prima facie* case, the prosecutor must tender a justification for the strike that is unrelated to the prospective juror's membership in a cognizable racial group. *People v. Cerrone, supra; see also Hernandez v. New York, supra.*

It is not necessary that the prosecutor's race-neutral justification contain a plausible basis for believing that a particular member of the venire would not be an effective juror. *Purkett v. Elem*, 524 U.S. ——, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995).

■ Here, as reasons for excusing the prospective juror, the prosecutor pointed to the juror's strong desire to leave on vacation by noon the following day, the fact that he had been robbed four times at gunpoint, and his having a brother who was an investigator for the public defender's office.

Such reasons do not manifest a clear intent to discriminate. Nor are they inherently discriminatory. Thus, these justifications satisfy the prosecutor's burden of production as to a race-neutral basis for the exclusion of the prospective juror.

### C.

■ After the prosecutor has offered a race-neutral explanation for the challenge, the trial court must determine as a matter of historical fact whether the defendant has established purposeful discrimination. *People v. Cerrone, supra; see also Hernandez v. New York, supra.*

It is during this part of the *Batson* process that the persuasiveness of the prosecutor's justification becomes relevant. Thus, "implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." *Purkett v. Elem, supra,* 524 U.S. at ——, 115 S.Ct. at 1771, 131 L.Ed.2d at 839.

■ These are generally questions of fact, and a trial court's findings on such questions are given deference by a reviewing court. *People v. Cerrone, supra; see also People v. Gardenhire,* 903 P.2d 1165 (Colo.App.1995).

■ Here, the record supports the trial court's conclusion that a non-racial basis existed for excusing the prospective juror. Moreover, the reasons tendered by the prosecutor were neither implausible nor fantastic. And, we cannot conclude, on this record, that there was any insidious racial discrimination underlying the prosecutor's explanation. Thus, we find no error. *People v. Cerrone, supra; see also Hernandez v. New York, supra.*

### II.

Defendant next contends that the trial court's instructions deprived him of his right to a trial by jury and his right to due process. We disagree.

### A.

■ Defendant argues that the trial court erred in its instruction defining the phrase "by use of force." Specifically, he asserts that the instruction was vague and provided no basis for distinguishing robbery from the lesser offense of theft from a person. We disagree.

■ The trial court has a duty to instruct the jury properly as to every element of the charged offense, and for the trial court to fail to carry out this duty is error. *Chambers v. People,* 682 P.2d 1173 (Colo.1984); *People v. Atkins,* 885 P.2d 243 (Colo.App.1994).

Section 18-4-301(1), C.R.S. (1986 Repl. Vol. 8B) provides that: "A person who knowingly takes anything of value from the person or presence of another *by the use of force,* threats, or intimidation commits robbery." (emphasis added)

In contrast, § 18-4-401, C.R.S. (1986 Repl Vol. 8B) defines theft as follows:

(1) A person commits theft when he knowingly obtains ... anything of value of another without authorization, or by threat or deception, and:

(a) Intends to deprive the other person permanently of the use or benefit of the thing of value....

. . . .

(5) Theft from the person of another by means *other than the use of force,* threat, or intimidation is a class 5 felony without regard to the value of the thing taken. (emphasis added)

■ Theft from a person as defined in §§ 18-4-401(1) and 18-4-401(5) is intended to cover those thefts involving an invasion of the victim's person of which the victim is unaware, but which are not accomplished through the use of force, threats, or intimidation. *People v. Warner,* 801 P.2d 1187 (Colo.1990).

Thus, force or fear is the distinguishing element between theft from a person and

robbery. *See People v. Thomas,* 181 Colo. 317, 509 P.2d 592 (1973).

"Force" has generally been defined as "power, violence, compulsion, or constraint exerted upon or against a person or thing; strength or power of any degree that is exercised without justification or contrary to law against a person or thing." *People v. Schoondermark,* 699 P.2d 411, 416 (Colo. 1985) (*quoting Webster's Third New International Dictionary* 887 (1976)).

■ There are no Colorado appellate decisions that clearly articulate the nature and extent of the force needed to constitute a robbery in a "purse snatching" case. However, other courts and commentators have examined the meaning of "force" in cases involving facts similar to those presented here. And, as noted in 2 W. LaFave & A. Scott, Jr., *Substantive Criminal Law* § 8.11(d)(1):

> The line between robbery and larceny from the person (between violence and lack of violence) is not always easy to draw. The 'snatching' cases, for instance, have given rise to some dispute.... To remove an article of value, attached to the owner's person or clothing, by a sudden snatching or by stealth is not robbery unless the article in question (e.g., an earring, pin or watch) is so attached to the person or his clothes as to require some force to effect its removal.

In *West v. State,* 312 Md. 197, 539 A.2d 231 (Md.App.1988), the Maryland Court of Appeals noted the general rule that the mere snatching of a item does not necessarily constitute a robbery. Rather, the snatching, if not accompanied by threat or intimidation, must involve the use of force. The court then held that the "force" element of robbery may be satisfied if there is any injury to the victim's person, or if the victim's resistance to the taking, however slight, is overcome.

The Illinois Supreme Court, in *People v. Taylor,* 129 Ill.2d 80, 133 Ill.Dec. 466, 541 N.E.2d 677 (Ill.1989), interpreted a robbery statute similar to § 18–4–301(1) to include the snatching of an object attached to the person of another in which force was used to tear or break the attachment. There, the court held:

> Sufficient force to constitute robbery may be found when the article taken is 'so attached to the person or clothes as to create resistance, however slight.' A person may attach an item to his or her person or clothing in such a manner that a perpetrator may not take the item without the use of force sufficient to overcome the resistance created by the attachment. The force required to overcome the physical resistance created by the attachment of an item to the person or clothing of the owner is to be distinguished from 'the mere physical effort' which must occur whenever an item, *not* attached to the person or clothing of the owner is, is transferred from one person (the owner) to another person (the taker)....

*People v. Taylor, supra,* 133 Ill.Dec. at 468, 541 N.E.2d at 679. (emphasis in original)

The *Taylor* court then determined that the defendant had used force "sufficient to overcome the resistance created by the necklace being attached to the person of [the victim]." *People v. Taylor, supra,* 133 Ill.Dec. at 470, 541 N.E.2d at 681.

Other courts have reached similar conclusions. *See United States v. Rodriguez,* 925 F.2d 1049 (7th Cir.1991) (victim's key chain was attached to his clothing and the defendant had to pull the chain to snatch the keys); *People v. Roberts,* 57 Cal.App.3d 782, 129 Cal.Rptr. 529 (1976) (robbery occurred when purse was grabbed with such force as to break the purse handle); *Raiford v. State,* 52 Md.App. 163, 447 A.2d 496 (1982) (when article stolen is so attached to the victim's person or clothing that resistance is offered to the taking solely by reason of the attachment, the snatching is a robbery); *State v. Adams,* 406 S.W.2d 608 (Mo.1966) (when the article snatched is so attached to the owner's person as to afford resistance or injure the possessor in the taking, the violence is sufficient to constitute a robbery).

These cases, in our view, provide a reasonable and practical resolution to the issues. Thus, we hold that robbery includes the snatching of an object attached to the person of another if force is used to tear or break

the attachment. *People v. Taylor, supra;* *see generally* Annotation, *Purse Snatching as Robbery or Theft,* 42 A.L.R.3d 1381 (1972).

Here, defendant tendered, and the trial court rejected, an instruction that defined "force" as "physical force applied to or against the victim at any time during the course of the transaction." The court instead instructed the jury that the phrase "by use of force" meant "physical force directed by the perpetrator against the victim to an extent that the victim is unable to retain control over the thing of value."

The trial court based this instruction on *People v. Bartowsheski,* 661 P.2d 235, 244 (Colo.1983), in which our supreme court held that for purposes of § 18–4–301(1):

> [P]roperty is taken from the 'presence of another' when it is so within the victim's reach, inspection or observation that he or she would be able to retain control over the property but for the force, threats, or intimidation directed by the perpetrator against the victim.
>
> . . . .
>
> The gravamen of robbery is the application of physical force or intimidation against the victim at any time during the course of a transaction culminating in the taking of property from the victim's person or presence.

Thus, the supreme court essentially set out a "but for" test—but for the force, the victim would have kept the property, irrespective of how the force was used.

The trial court here was correct in instructing the jury that the force required to constitute robbery must be sufficient to render the victim unable to retain control over the thing of value. This conveys the rule of *Bartowsheski* to allow the jury to apply the proper standard. Thus, we find no error.

## B.

Defendant next contends that the trial court erred in refusing to give his theory of the case instruction. We disagree.

 A criminal defendant is entitled to an instruction embodying his or her theory of the case. *People v. Nunez,* 841 P.2d 261

(Colo.1992). However, the trial court is given substantial discretion in formulating the instructions so long as they are correct statements of the law and fairly and adequately cover the issues presented. *United States v. Bryant,* 892 F.2d 1466 (10th Cir.1989). The defendant is not entitled to choose the specific words of the instructions. *United States v. Hoffner,* 777 F.2d 1423 (10th Cir.1985).

 Defendant tendered, and the trial court rejected, a theory of the case instruction that stated:

> Jamie Davis states that he knowingly took [the victim's] purse without her authorization, but that he did not do so by means of force applied to or against her. Mr. Davis snatched [the victim's] purse which caused a very slight tug on [the victim's] arm. This very slight tug associated with snatching the purse in this case does not constitute physical force applied to or against [the victim] as is required for the crime of robbery. Mr. Davis contends that he is guilty of theft from a person and that he is not guilty of robbery.

The trial court modified the tendered instruction and instructed the jury that:

> It is the defendant's theory of the case that he knowingly took [the victim's] purse without authorization, but that he did not do so by use of force against her. The defendant contends he snatched ... [the] purse and caused a very slight tug on [the victim's] arm and the very slight tug associated with the snatching of the purse in this case does not constitute the use of force against [the victim] as is required by the crime of robbery. The defendant contends that he is guilty of theft from a person and that he is not guilty of robbery.

The only difference between defendant's proposed instruction and the instruction given to the jury by the trial court was that defendant's instruction stated that his tugging on the purse did not constitute "physical force applied to or against [the victim]," while the trial court's instruction stated that, under defendant's theory of the case, the tug on the victim's arm was insufficient to constitute a "use of force against [the victim]."

For a defendant to be convicted of robbery, the defendant must take the property of another by use of force, threat, or intimidation. The use of force need not be applied directly against the person of the victim. Rather, it is sufficient if the defendant uses enough force to overcome the resistance caused by an object attached to the person of the victim. Thus, because the instruction given by the trial court accurately reflected the law, we perceive no error. *See generally People v. Taylor, supra.*

## C.

Defendant next argues that the trial court erred in not instructing the jury that it was required to determine whether he took the purse with knowledge that the victim was of an age sufficient to make her an at-risk adult. We disagree.

As pertinent here, § 18–6.5–102(1), C.R.S. (1995 Cum.Supp.) defines an "at-risk" adult as: "any person who is sixty years of age or older...."

Section 18–6.5–103(4), C.R.S. (1995 Cum. Supp.) provides that:

> Any person who commits robbery, as such crime is described in section 18–4–301(1), and the victim is an at-risk adult ... commits a class 3 felony. If the offender is convicted of robbery of an at-risk adult ... the court shall impose at least the presumptive sentence under section 18–1–105(1).

In *People v. Suazo,* 867 P.2d 161 (Colo. App.1993), a division of this court addressed a contention similar to that now raised by defendant. There, the defendant had asserted that the now repealed "assault on the elderly" statute, *see* Colo.Sess.Laws 1984, ch. 132, § 18–3–209 at 542, *repealed at* Colo. Sess.Laws 1995, ch. 240, § 8, at 1251–52, required that a defendant be shown to have acted with knowledge that the victim was over the age of 60.

In *Suazo,* the court looked to the plain language of the statute and the absence of any statutorily defined defense of "reasonable mistake of age" to determine that the age of the victim was, in essence, a strict liability component of the offense.

Examining §§ 18–6.5–102 and 18–6.5–103, C.R.S. (1995 Cum.Supp.) in light of *Suazo,* we find no indication that the General Assembly intended to require that a defendant act with knowledge of the age of a victim in order to be charged with a crime against an at-risk adult. The relevant statutes contain no *mens rea* element. Nor do they provide a defense for those defendants who might make a reasonable mistake as to their victims' ages.

Thus, we conclude that the trial court did not err in refusing to instruct the jury that knowledge of the age of the victim was an element of the offense of robbery of an at-risk adult. *See generally People v. Suazo, supra.*

## III.

We reject defendant's contention that the evidence was insufficient to support his conviction for robbery of an at-risk adult.

We must determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion that the defendant is guilty of the charged offenses beyond a reasonable doubt. *Kogan v. People,* 756 P.2d 945 (Colo.1988).

As noted above, robbery is committed when a person knowingly takes anything of value from the person or presence of another by the use of force, threats, or intimidation. Section 18–4–301(1).

Here, the record shows that defendant pulled the purse from the victim's arm with sufficient force to break the strap. This was sufficient force to overcome the resistance of the purse having been attached to the victim's person. *See People v. Taylor, supra.* Finally, the record clearly established that the victim was over the age of 60 at the time of the offense, making her an at-risk adult for purposes of 18–6.5–103. *See People v. Suazo, supra.*

Taking the evidence as a whole and in the light most favorable to the verdict, we conclude that a reasonable jury could have found defendant guilty of the charged offense be-

yond a reasonable doubt. *See Kogan v. People, supra.*

## IV.

Defendant next contends that the trial court erred in refusing to find that the application of §§ 18–4–301, 18–6.5–102, and 18–6.5–103 to him, violated his rights to due process and equal protection of the laws. Again, we disagree.

██ When two statutes provide disparate penalties for similar criminal conduct, equal protection guarantees are violated. *People v. Montoya,* 196 Colo. 111, 582 P.2d 673 (1978). Likewise, when two offenses are different so that persons charged under them are not similarly situated, irrational classifications may violate equal protection. *People v. Suazo, supra.*

However, when different statutes establish a real distinction between two separate offenses, their application does not result in disparate penalties for identical conduct. *People v. Young,* 758 P.2d 667 (Colo.1988).

██ Defendant asserts that his conduct could rightfully qualify either as theft from a person or as robbery. Thus, he argues that the increased sentence he received for robbery was based upon an irrational classification.

However, the distinguishing factor here is that defendant used sufficient force to overcome the resistance caused by the purse being attached to the victim's arm. This force was employed in a manner that actually broke the purse strap, and is measurably different from the kind of "force" used in taking a purse without causing damage to it. Thus, a rational distinction between theft from a person and robbery exists in this case. *See People v. Taylor, supra.*

## V.

██ Arguing that the trial court erred in interpreting § 18–6.5–103(4) to require that it must impose both a sentence to the Department of Corrections and a fine, defendant argues that his sentence must be vacated and he should be resentenced. We disagree.

At defendant's sentencing hearing, the trial court determined that § 18–6.5–103(4) required that he be sentenced to imprisonment at the Department of Correction for a minimum term of four years and that he be fined $3,000. The court added: "[I]f I felt that there was some discretion given to me in some fashion to give you a lesser sentence, in all likelihood, I would have done so. But I don't find under the law that I have any discretion to do anything but what I've done." We agree with the trial court that the applicable statutes preclude a lesser sentence here.

In *People v. District Court,* 713 P.2d 918, 921 (Colo.1986), our supreme court summarized the framework for interpreting criminal statutes. It stated:

> Our primary task in construing a statute is to ascertain and give effect to the intent of the General Assembly.... Constructions which defeat the obvious legislative intent should be avoided.... To discern that intent, a court should look first to the language of the statute.... Words and phrases should be given effect according to their plain and ordinary meaning.... If the language is clear and the intent appears with reasonable certainty, there is no need to resort to other rules of statutory construction....

> To reasonably effectuate the legislative intent, a statute must be read and considered as a whole.... Where possible, the statute should be interpreted so as to give consistent, harmonious, and sensible effect to all its parts.

Section 18–6.5–103(4) provides, in pertinent part that: "If the offender is convicted of robbery of an at-risk adult ... the court shall impose at least the presumptive sentence under section 18–1–105(1)."

██ The word "shall" connotes a mandatory meaning. *People v. District Court, supra.*

Section 18–1–105(1), C.R.S. (1995 Cum. Supp.) lists presumptive ranges for only two

types of sentences: fines and imprisonment. By reference only to § 18–1–105, and by using the mandatory word "shall," the General Assembly did not allow a trial court discretion to engraft probation, part of an entirely separate statutory scheme, onto its sentencing decision. *See People v. Flenniken,* 749 P.2d 395 (Colo.1988).

The judgment and sentence are affirmed.

DAVIDSON and RULAND, JJ., concur.