**UNITED STATES of America,**
**Plaintiff/Respondent,**

v.

**1. Armando DURETE,**
**Defendant/Movant.**

**Civil Action No. 16-cv-1343-WJM**
**Criminal Case No. 14-cr-071-WJM-1**

United States District Court,
D. Colorado.

Signed September 13, 2016

Mark J. Barrett, U.S. Attorney's Office, Denver, CO, for Plaintiff/Respondent.

Adam Michael Tucker, The Law Office of Adam Tucker, P.C., Denver, CO, for Defendant/Movant.

### AMENDED * ORDER GRANTING 28 U.S.C. § 2255 MOTION

William J. Martínez, United States District Judge

Before the Court is Defendant Armando Durete's Motion to Vacate Under 28 U.S.C. § 2255. (ECF No. 41.)[1] For the reasons explained below, the petition is granted, Durete's criminal judgment is va-

cated, and this matter will be set for resentencing.

## I. BACKGROUND

### A. Durete's Sentence

On July 1, 2014, Durete pleaded guilty to one count of possession of a firearm by a convicted felon ("felon-in-possession"), in violation of 18 U.S.C. § 922(g)(1). (ECF No. 27.) The Probation Office then prepared a Presentence Investigation Report (PSIR) which calculated Durete's sentencing range under the United States Sentencing Guidelines ("Guidelines"). (ECF No. 31.) That calculation began with Guidelines § 2K2.1, which specifies a base level of 20 if an individual guilty of felon-in-possession already has "one felony conviction of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(4)(A).[2] The Probation Office found that Durete had "a [prior] felony conviction for a crime of violence, specifically, Robbery, in Arapahoe County [Colorado] District Court," and therefore a base offense level of 20. (ECF No. 31 ¶ 26.) After various other adjustments, the PSIR calculated a total offense level of 21. (Id. ¶ 35.) The PSIR also concluded that Durete had a criminal history score of 17, which falls within criminal history category VI. (Id. ¶ 52.) His Guidelines advisory sentencing range was therefore 77–96 months. (ECF No. 31-1 at R-1.) See also United States Sentencing Commission, Guidelines Manual 395 (2013).

The Court accepted the PSIR without change but granted a downward departure from the advisory range because the Court found that Durete's criminal history was overrepresented through traffic offenses. (ECF No. 37 at 7–8.) The Court therefore subtracted 7 criminal history points, re-

---

\* Amended to clarify the reasoning of the decisions cited in footnote 11, below.

1. The caption of Durete's motion erroneously states that it is based on "18 U.S.C. § 2255."

2. Unless otherwise noted, all Guidelines citations in this order are to the 2013 edition of the Guidelines, which was in effect at the time Durete was sentenced. (See ECF No. 31 ¶ 25.)

sulting in a criminal history score of 10 and a criminal history category of V. (*Id.* at 8.) Under that category, the advisory sentencing range became 70–87 months. *See Guidelines Manual* 395. The Court then sentenced Durete to a prison term of 70 months, followed by supervised release for 3 years. (ECF No. 37 at 2–3.) Durete did not appeal.

## B. *Johnson* and *Welch*

On June 26, 2015, the Supreme Court decided *Johnson v. United States*, — U.S. ——, 135 S.Ct. 2551, 192 L.Ed.2d 569 (2015).[3] *Johnson* examined the Armed Career Criminal Act ("ACCA"), which mandates a 15-year minimum sentence for anyone convicted of felon-in-possession who "has three previous convictions ... for a violent felony." 18 U.S.C. § 924(e)(1). Specifically at issue in *Johnson* was the ACCA's definition of "violent felony":

> any crime punishable by imprisonment for a term exceeding one year ... if committed by an adult, that—
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another* [.]

*Id.* § 924(e)(2)(B) (emphasis added).

The italicized phrase in clause (ii) is commonly known as the "residual clause," while clause (i) is sometimes known as the "elements clause." All parties in *Johnson* agreed that whether the defendant, Samuel Johnson, qualified for the mandatory 15-

year minimum sentence turned on whether his prior state-law conviction for unlawful possession of a short-barreled shotgun fell within the residual clause. *Johnson*, 135 S.Ct. at 2556. The Supreme Court held, however, that the residual clause was unconstitutional: "We are convinced that the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges. Increasing a defendant's sentence under the clause denies due process of law." *Id.* at 2557.

On April 18, 2016, the Supreme Court decided *Welch v. United States*, — U.S. ——, 136 S.Ct. 1257, 194 L.Ed.2d 387 (2016). *Welch* held that *Johnson* announced a "substantive" change in the criminal law and therefore applies retroactively to prisoners who had received the ACCA mandatory minimum sentences on account of an offense that was deemed a "violent felony" due to the residual clause. *Id.* at 1265. Thus, via 28 U.S.C. § 2255, those prisoners could collaterally challenge their sentences as unconstitutional.

## C. Durete's Petition

Durete was *not* sentenced under the ACCA. However, his base offense level was calculated with reference to Guidelines language that is nearly identical to the ACCA's definition of "violent felony." Specifically, Guidelines § 2K2.1(a)(4)(A) establishes a base offense level of 20 for offenders who have previously committed a "crime of violence," which is defined by cross-reference to § 4B1.2(a). *See* U.S.S.G. § 2K2.1, Application Note 1. Section 4B1.2(a), in turn, provided the following definition of "crime of violence":[4]

---

**3.** References in this opinion to *Johnson*, without more, are to this *Johnson* decision. However, the Court will at times refer to this decision as *Samuel Johnson*, to distinguish it from another Supreme Court *Johnson* decision—*Curtis Johnson*—that also turns out to be relevant herein.

**4.** This section has since been amended, but Guidelines ranges are calculated according to the Guidelines in effect at the time the defendant is sentenced. *See* U.S.S.G. § 1B1.11.

any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

Save for the addition of "of a dwelling" after "burglary," paragraphs (1) and (2) are verbatim copies of the corresponding paragraphs in the ACCA's "violent felony" definition, including both the elements clause and residual clause.

As noted above, the PSIR found that Durete's Arapahoe County robbery conviction was a "crime of violence" under this definition. The PSIR did not specify specifically where Durete's robbery conviction fit into this definition, perhaps because § 4B1.2's Application Note 1 states that "[c]rime of violence' includes ... robbery"—although the Application Note likewise fails to explain where robbery fits into the definition.

Durete claims that robbery could only fit under the residual clause. Durete further claims that the residual clause is unconstitutional in light of *Johnson* and *Welch*,[5] and therefore his base offense level should never have been as high as 20. "Holding all other [sentencing] variables constant," Durete calculates that he "would have been sentenced to approximately 37 months" but for the allegedly improper base offense level. (ECF No. 41 at 2.) Under that assumption, and accounting for good time credit, he calculates that his proper release date should have been "approximately August 10, 2016"—about one month ago. (ECF No. 49 at 2.)

## II. ANALYSIS

Durete's petition raises two basic questions:

- First, did *Johnson* announce a substantive rule of criminal law specific to the residual clause in the ACCA, or is *Johnson*'s holding also applicable to other instances of the same clause, such as in Guidelines § 4B1.2(a)? In other words, does *Welch*'s declaration that *Johnson* applies retroactively to cases on collateral review only permit collateral review of sentences enhanced under the ACCA's residual clause, or does it also perm it collateral review of sentences imposed with reference to a Guidelines calculation that was enhanced under § 4B1.2(a)'s identical residual clause?

- Second, assuming the residual clause is excised from § 4B1.2(a)(2), does Durete's robbery conviction still qualify as a crime of violence under any other portion of § 4B1.2(a), such as the elements clause? In other words, would Durete's base offense level calculation have been the same anyway?

Both of these issues are potentially dispositive. But a decision against Durete on the first question would, in all likelihood, only render his § 2255 petition premature. The Supreme Court could still consider § 4B1.2(a) directly, reach the same holding as in *Johnson*, and reach the same retroactivity conclusion as in *Welch*—thus potentially opening the path for a renewed petition from Durete.[6] By contrast, a decision

---

**5.** After *Johnson* but before *Welch*, the Tenth Circuit held in *United States v. Madrid*, 805 F.3d 1204, 1210 (10th Cir. 2015), that § 4B1.2(a)'s residual clause was unconstitutional in light of *Johnson*. Given § 2255's dictate that the Supreme Court controls whether constitutional rulings may be applied

retroactively to sentences already imposed (discussed in Part II.B, below), *Madrid* is not strictly relevant to the question of whether Durete's sentence should be vacated.

**6.** The Supreme Court will consider these issues in its upcoming Term. *See Beckles v.*

against Durete on the second question would be finally dispositive because, regardless of the answer to the first question, Durete would have no basis to argue for a different sentence. Given this, the Court will address the second question first.

## A. Is Simple Robbery in Colorado a "Crime of Violence" for Purposes of § 4B1.2(a)(1)?

### 1. The Categorical Approach

■ The Tenth Circuit prescribes the "categorical approach" to determine whether an offense is a "crime of violence" for purposes of § 4B1.2(a). *See United States v. Wise*, 597 F.3d 1141, 1144 (10th Cir. 2010). Under this approach, the sentencing court "looks to the words of the statute and judicial decisions interpreting it, rather than to the conduct of any particular defendant convicted of the crime." *Id.* In other words, a court must look to "the least of the[ ] acts" that could be prosecuted under the relevant statute. *Curtis Johnson v. United States*, 559 U.S. 133, 137, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010). The court then inquires whether that minimum conduct meets the Guidelines definition of a crime of violence.

In this light, it bears noting that, at the time Durete was sentenced, § 4B1.2(a)'s "crime of violence" definition would have read as follows without the residual clause:

any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

(2) is burglary of a dwelling, arson, or extortion, or involves use of explosives.

No party disputes the predicate that Durete's robbery conviction was "punishable by imprisonment for a term exceeding one

year." In addition, no party argues that Durete's robbery conviction equates to "burglary of a dwelling, arson, or extortion, or involves use of explosives." Accordingly, his robbery conviction qualifies as a crime of violence only if the robbery statute under which Durete was convicted "has as an element the use, attempted use, or threatened use of physical force against the person of another."

### 2. "Physical Force"

Before turning to that robbery statute, the Court must define "physical force against the person of another." Durete and the Government agree that the proper definition comes from the Supreme Court's *Curtis Johnson* decision. (ECF No. 41 at 5; ECF No. 52 at 10.) *Curtis Johnson*, like *Samuel Johnson*, construes the ACCA's definition of "violent felony." *Curtis Johnson*, 559 U.S. at 135, 130 S.Ct. 1265. At issue in *Curtis Johnson*, however, was the elements clause, *i.e.*, the portion of the definition regarding offenses that have "as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). The question before the Supreme Court was whether Curtis Johnson's prior conviction for simple battery under Florida law satisfied the "physical force" requirement, 559 U.S. at 136, 130 S.Ct. 1265, particularly given the Florida Supreme Court's holding that Florida's simple battery offense may be committed "by any intentional physical contact, no matter how slight. The most nominal contact, such as a tap on the shoulder without consent, establishes a violation," *id.* at 138, 130 S.Ct. 1265 (internal quotation marks and citations omitted; alterations incorporated).

■ In light of this holding, the U.S. Supreme Court in turn held that simple

battery in Florida does not have "as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). This is because, for purposes of § 924(e)(2)(B)(i), " 'physical force' means violent force—that is, force capable of causing physical pain or injury to another person." *Curtis Johnson*, 559 U.S. at 140, 130 S.Ct. 1265. It requires "a substantial degree of force," or "strong physical force," akin to that required for offenses such as "forcible rape" or "assault and battery with a dangerous weapon." *Id.* at 140–41, 130 S.Ct. 1265 (internal quotation marks omitted).

Again, both Durete and the Government agree that *Curtis Johnson* sets the standard for § 4B1.2(a)(1)'s identical elements clause: "has as an element the use, attempted use, or threatened use of physical force against the person of another." The Court likewise agrees. Accordingly, the Court must apply *Curtis Johnson*'s definition of "physical force" when examining whether Colorado's simple robbery statute describes a crime of violence under the elements clause.

### 3. Simple Robbery Under Colorado Law

The parties appear to agree that Durete's Arapahoe County robbery conviction was specifically a conviction under Colorado's simple robbery statute: "A person who knowingly takes anything of value from the person or presence of another by the use of force, threats, or intimidation commits robbery." Colo. Rev. Stat. § 18–4–301(1). (*See also* ECF No. 52 at 10.) In *People v. Jenkins*, 198 Colo. 347, 599 P.2d 912 (1979), the Colorado Supreme Court interpreted the "threats, or intimidation" portion of this statute as if it actually says "or use of constructive force." *Id.* at 914. In other words, the court said, "threats" and "intimidation" must involve force or fear of force. *Id.* at 913.

Simple robbery nonetheless does not have "as an element the use, attempted use, or threatened use of physical force against the person of another," U.S.S.G. § 4B1.2(a)(1), because Colorado cases make clear that the amount of force necessary to commit simple robbery does not rise to the *Curtis Johnson* definition of "physical force." This is shown most clearly in *People v. Davis*, 935 P.2d 79 (Colo. App. 1996).

The defendant in *Davis* was charged with and convicted of simple robbery on account of a purse snatch described as follows: "[H]e grabbed the purse and, with a quick jerking motion, caused the strap to break. The victim testified that she had felt a 'very slight' tug as the strap broke." *Id.* at 82. On appeal, the defendant argued that a jury instruction regarding use of force "was vague and provided no basis for distinguishing robbery from the lesser offense of theft from a person." *Id.* at 83. The Colorado Court of Appeals agreed with one premise of the defendant's argument, namely, that "force or fear is the distinguishing element between theft from a person and [simple] robbery." *Id.* at 83–84. But the court also agreed with various other authorities that "[s]ufficient force to constitute robbery may be found when the article taken is so attached to the person or clothes as to create resistance, however slight." *Id.* at 84 (internal quotation marks omitted). Thus, simple robbery in Colorado "includes the snatching of an object attached to the person of another if force is used to tear or break the attachment." *Id.* at 84–85. "[T]he force required to constitute robbery must be sufficient to render the victim unable to retain control over the thing of value." *Id.* at 85. The court therefore upheld the conviction.

Just as a "slight" touching was not enough in *Curtis Johnson* to bring Florida's simple battery statute within the

ACCA, robbery that may be committed by force "however slight," including a "slight tug" sufficient to break a strap, does not fall within § 4B1.2(a)(1). In other words, the minimal amount of force necessary to justify a conviction does not rise to "violent force—that is, force capable of causing physical pain or injury to another person." 559 U.S. at 140, 130 S.Ct. 1265. Colorado's simple robbery statute therefore does not have "as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1).

### 4. "Generic Robbery"

The Government argues that, despite the foregoing, Durete's robbery conviction still qualifies as a crime of violence because "generic robbery" is an enumerated offense in § 4B1.2's Application Note 1: " 'Crime of violence' includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, *robbery*, arson, extortion, extortionate extension of credit, and burglary of a dwelling" (emphasis added). The Court rejects this argument for two reasons. First, the enumerated offenses in the Application Note are best seen as grounded in the residual clause, which is now invalid. That portion of the Application Note is therefore itself invalid. Second, even if some of the enumerated offenses were not grounded in the residual clause, "generic robbery" can only be justified with reference to the residual clause, and is therefore invalid. The Court will discuss each reason in turn.

#### a. *Invalidity of Application Note 1's Enumerated List*

▮ An Application Note in the Guidelines is "authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." *Stinson v. United States*, 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). The Court

concludes that the enumerated offenses in Application Note 1 are inconsistent with § 4B1.2 now that the residual clause can no longer be considered a part of that Guideline.

To explain, the Court begins by quoting Application Note 1 in full:

> "Crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling. Other offenses are included as "crimes of violence" if (A) that offense has as an element the use, attempted use, or threatened use of physical force against the person of another, or (B) the conduct set forth (*i.e.*, expressly charged) in the count of which the defendant was convicted involved use of explosives (including any explosive material or destructive device) or, by its nature, presented a serious potential risk of physical injury to another.

Importantly, the Application Note begins by listing a number of offenses (murder, manslaughter, etc.) and then moves on to the elements clause ("Other offenses are included ... if (A) that offense has as an element ...."). In other words, there is no suggestion that the specifically enumerated offenses fall within the elements clause. Moreover, three of the enumerated offenses (burglary, arson, and extortion) repeat the enumerated offenses leading up to the *residual* clause in § 4B1.2(a)(2), as does the use-of-explosives language later in the Application Note. As the Supreme Court noted in *Samuel Johnson*, the enumerated offenses preceding the residual clause have long been treated as illustrative guides to the meaning of the residual clause itself. *See* 135 S.Ct. at 2557. Thus, there is strong reason to conclude that the enumerated offenses in Application Note 1 were selected with reference to offenses

the Sentencing Commission deemed to fall within the residual clause.

This conclusion is further strengthened by certain of the enumerated offenses in Application Note 1 that are *not* drawn from § 4B1.2(a)(2). Some of these offenses cannot be linked to the elements clause and therefore could only be justified as examples of offenses falling under the residual clause. For example, although we generally think of murder as a violent act, statutory definitions of murder often do not specify force or violence as an element of the crime. *See, e.g.,* Colo. Rev. Stat. § 18-3-102(a)(1) ("A person commits the crime of murder in the first degree if * * * [a]fter deliberation and with the intent to cause the death of a person other than himself, he causes the death of that person or of another person[.]"). This makes sense from a state legislature's perspective because it would naturally want to prohibit murder regardless of the means by which it is accomplished. The legislature, for example, would not want a defendant to go free simply because the defendant killed the victim by barricading her in her own bedroom, thus depriving her of food and water. But this focus on the ends, rather than the means, creates a disconnect with the elements clause. The elements clause focuses on the means more than the ends. Thus, if murder, as typically defined, fits anywhere in § 4B1.2(a), it could only be under the residual clause.

The same must be true for the enumerated extortion offenses. As the Supreme Court noted in *Samuel Johnson*, "[t]he act of making an extortionate demand ... does not, in and of itself, normally cause physical injury." 135 S.Ct. at 2557. Thus, it would not fit within the elements clause, and could only be explained—if at all—with reference to the residual clause.

All of the foregoing leads the Court to find that the only unifying explanation for the enumerated offenses in Application Note 1 is the residual clause. The Government does not argue that the residual clause in § 4B1.2(a) remains valid despite *Johnson*'s invalidation of the same language in the ACCA. Thus, the Government has implicitly conceded that § 4B1.2(a)'s residual clause is defunct. Consequently, the list of enumerated offenses has no valid basis in the Guidelines text and is therefore not controlling. *Cf. United States v. Soto-Rivera*, 811 F.3d 53, 59–60 (1st Cir. 2016) (declining to follow Application Note 1 to the extent based on the residual clause). The Court therefore need not consider whether Durete committed "generic robbery."

### b. *Invalidity of Robbery Specifically as an Enumerated Offense*

Nonetheless, for thoroughness, the Court concludes that generic robbery itself has no proper basis in the Guidelines text, even if other enumerated offenses might still have a proper basis.

When evaluating the scope of enumerated offenses in the Guidelines, federal courts "look to the 'uniform generic definition' of [the enumerated] offense." *United States v. Castillo*, 811 F.3d 342, 345 (10th Cir. 2015). "This inquiry is guided by reference to ... the majority of the States' criminal codes, as well as prominent secondary sources, such as criminal law treatises and the Model Penal Code." *Id.* at 346 (internal quotation marks and citations omitted). Professor LaFave's *Substantive Criminal Law* treatise appears to be one of the most frequently consulted of such sources. *See id.*

In arguing that Colorado robbery and generic robbery are essentially the same, the Government emphasizes the Colorado Supreme Court's decision in *People v. Borghesi*, 66 P.3d 93, 97 (Colo. 2003). Drawing on the LaFave treatise, among other sources, the *Borghesi* opinion provides the

Government with statements such as the following:

- "[Colorado's simple robbery statute] track[s] the basic elements of common law robbery";
- "there can be no robbery without violence"; and
- "the gravamen of the offense of robbery is the violent nature of the taking."

66 P.3d at 99, 100. However much these statement may seem to support the Government's position, the Government loses sight of four countervailing considerations.

■ First, the fact that the Colorado Supreme Court uses the words "violence" and "violent" has no bearing on what qualifies as a crime of violence under the Guidelines. "The meaning of [such terms in the Guidelines] is a question of federal law, not state law. And in answering that question [federal courts] are not bound by a state court's interpretation of a similar—or even identical—state statute." *Curtis Johnson*, 559 U.S. at 138, 130 S.Ct. 1265.

Second, the *amount* of force needed to commit simple robbery was not at issue in *Borghesi. Borghesi* was instead analyzing a very different question. In *Borghesi*, the defendant robbed a store while two clerks were present at the cash register. 66 P.3d at 95. Given that he wielded a hatchet, the state charged him with aggravated robbery. *Id.* at 95, 96. Interestingly, however, the state charged him with *two* counts of aggravated robbery because there were *two clerks* present. *Id.* at 96. The Colorado Supreme Court was therefore asked to consider whether robbery is a crime against property (in which case the defendant should only have been charged once) or a crime against persons who have control over the property in question (in which

case two counts were appropriate). *Id.* at 97. The Colorado Supreme Court concluded that robbery was a crime against persons, and the above-quoted passages regarding Colorado robbery's congruence with common law robbery were made in the context of explaining that conclusion. *Id.* at 99–101. Moreover, the purpose of the above-quoted passages was to demonstrate the distinction between robbery on the one hand and larceny on the other. For that reason, the Colorado Supreme Court noted that "there can be no robbery without violence, and there can be no larceny with it." *Id.* at 99. But again, "how much 'violence'?" was not at issue—either for the aggravated robbery offense actually charged or the simple robbery offense that received most of the discussion.[7]

Third, although the Colorado Supreme Court did not quantify the specific amount of force required for simple robbery, it nonetheless compared the relative force necessary to commit simple robbery versus aggravated robbery: "aggravated robbery differs from simple robbery in the degree of force and violence directed at a victim." *Id.* at 97. This Court need not hold as much at this time, but if any robbery-related crime in Colorado has as an element the amount of physical force required by *Curtis Johnson*, it would be aggravated robbery. *See* Colo. Rev. Stat. § 18–4–302(1)(b) (aggravated robbery defined to include, among other things, "use of force, threats, or intimidation with a deadly weapon [that] knowingly put[ ] the person robbed or any other person in reasonable fear of death or bodily injury"). In light of *Borghesi*, simple robbery must be satisfied by something less than this.

Finally and most importantly, Colorado probably *does* follow the "generic," com-

---

7. The court focused its discussion on simple robbery because of its connection to the common law definition and the fact that a conclu-sion with respect to simple robbery would be equally valid as to aggravated robbery. *Id.* at 97.

mon law definition of robbery (whether *Borghesi* established as much or not). But it does not follow that any such definition has as an element the use of physical force as defined by *Curtis Johnson*. Indeed, the Government's proffered definition from Professor LaFave does not go that far. (*See* ECF No. 52 at 14–15.) LaFave defines robbery as requiring six elements of larceny "plus two additional requirements: (7) that the property be taken from the person or presence of the other and (8) that the taking be accomplished by means of force or putting in fear." 3 Wayne R. LaFave, *Substantive Criminal Law* § 20.3 (2d ed., Oct. 2015 update). As to the force-or-fear element, the amount of force required is minimal. For example, pickpocketing is typically a form of larceny, but it may become robbery "if the pickpocket or his confederate jostles the owner." *Id.* § 20.3(d)(1). Jostling, of course, might be simple battery, but it is not a crime of violence under *Curtis Johnson*.

Moreover, LaFave notes, state legislatures nationwide have rejected the idea of requiring some greater amount of force as an element of robbery:

> On the ground that the law should not make such fine distinctions [such as in the pickpocketing example] and that the law of robbery is more properly directed at conduct placing the victim in serious fear, the Model Penal Code position is that only an infliction of "serious bodily injury" will suffice. However, the mod-

ern codes have consistently rejected such a limitation.

*Id.* (footnote omitted).

In this light, *People v. Davis*—the purse-snatching case discussed above in Part II.A.3—again becomes relevant. *Davis* consulted an earlier edition of the LaFave treatise in deciding whether the "slight tug" necessary to break the purse strap at issue was sufficient to satisfy the force requirement for simple robbery in Colorado. 935 P.2d at 84 (quoting 2 LaFave § 8.11(d)(1), renumbered as § 20.3(d)(1) in current edition). Consistent with the "generic" definition of robbery, *Davis* said yes—and for that very reason this Court need not resort to fanciful hypotheticals regarding ways in which Colorado might apply its robbery statute that do not rise to the level of physical force required by *Curtis Johnson*. *Davis* itself shows that Colorado has *already* applied its simple robbery statute in a manner that does not require "physical force" as defined in *Curtis Johnson*.

■ For all these reasons, the Court concludes that the enumerated "generic" offense of robbery in Application Note 1 does not itself have as an element sufficient force to satisfy the *Curtis Johnson* standard. Accordingly, the only basis in § 4B1.2(a) for declaring robbery to be a crime of violence is the residual clause, which the Government concedes is no longer valid. The enumeration of robbery as a crime of violence is likewise no longer valid.[8]

---

8. Effective August 1, 2016, "robbery" became an enumerated "crime of violence" in the text of § 4B1.2(a)(2) itself, as opposed to in the Application Note. *See* United States Sentencing Commission, *Supplement to the 2015 Guidelines Manual* 5 (2016), *available at* http://www.ussc.gov/sites/default/files/pdf/guidelines-manual/2015/GLMSupplement.pdf (last accessed Sept. 8, 2016). Assuming that simple robbery in Colorado equates to generic robbery as now enumerated in § 4B1.2(a)(2), this Court could not apply the amended Guideline to Durete because it would lead to a sentencing enhancement based on law that did not exist at the time of his crime, in violation of the Constitution's *ex post facto* clause. *See* U.S.S.G. § 1B1.11(b)(1).

In sum, Durete's Arapahoe County robbery conviction was not a crime of violence under § 4B1.2(a), and therefore his base offense level should not have been enhanced on that account.[9]

**B. Does *Johnson*'s Holding Apply to Sentences Imposed Under § 4B1.2(a)?**

 Whether Durete may challenge his sentence at this time is bound up with § 2255's statute of limitations, which states in relevant part:

A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—

(1) the date on which the judgment of conviction becomes final;

* * *

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review . . . .

28 U.S.C. § 2255(f). In light of *Welch*, there is no question that *Johnson* (*i.e.*, *Samuel Johnson*) announced a substantive rule which the Supreme Court has declared retroactive on collateral review. (*See*

Part I.B, *above*.) The question, then, is the scope of the substantive rule announced *Johnson*. If *Johnson* extends no further than the ACCA, then there is no "newly recognized" right with respect to § 4B1.2(a), and therefore no justification for Durete to bring this § 2255 petition outside of the one-year period from the date on which conviction became final.[10]

 As the Court understands it, Durete claims that the due process violation recognized in *Johnson* is an inherent flaw of *the language* used in the residual clause, not in the residual clause as found in the ACCA specifically. Thus, from Durete's perspective, *Johnson* established that *that language* is unconstitutionally vague—a rule that necessarily extends to any other instance of that same language, including in § 4B1.2(a). The Government takes essentially the opposite position, *i.e.*, that *Johnson* announced a rule limited to the ACCA's residual clause, and the Supreme Court has never announced (or made retroactive) a substantive rule specific to § 4B1.2(a).

The Court finds that Durete has the better argument. *Johnson* largely focuses on a basic problem inherent in the language that the ACCA and the Guidelines share:

---

**9.** The Government has not argued that any other incident from Durete's criminal history could nonetheless justify a career offender enhancement under § 4B1.2(a).

**10.** The Government argues that, regardless of whether *Johnson* applies retroactively to cases under § 4B1.2(a), Durete should not be allowed to pursue a § 2255 petition on this basis because he never presented his current argument in a direct appeal. (ECF No. 52 at 6–9.)

The Court finds under the circumstances that the failure to take a direct appeal is no barrier to Durete's present § 2255 petition. Before *Johnson*, the argument Durete currently makes would have failed unless he had taken it all the way to the Supreme Court and

convinced the Supreme Court to overrule *Sykes v. United States*, 564 U.S. 1, 131 S.Ct. 2267, 180 L.Ed.2d 60 (2011). *Sykes* held that the residual clause "states an intelligible principle and provides guidance that allows a person to conform his or her conduct to the law." *Id.* at 15, 131 S.Ct. 2267 (internal quotation marks omitted). This is what *Johnson* eventually overruled. *See Johnson*, 135 S.Ct. at 2559. To preserve his current argument, Durete was not required to argue on direct appeal that Supreme Court precedent should be overruled, particularly precedent as recent as *Sykes*. *See United States v. Snead*, 2016 WL 4091548, at *2–3 (N.D. Cal. Aug. 2, 2016); *United States v. Dean*, 169 F.Supp.3d 1097, 1055–115, 2016 WL 1060229, at *5–12 (D. Or. Mar. 15, 2016).

Deciding whether the residual clause covers a crime ... requires a court to picture the kind of conduct that the crime involves in "the ordinary case," and to judge whether that abstraction presents a serious potential risk of physical injury. The court's task goes beyond deciding whether creation of risk is an element of the crime. That is so because, unlike the part of the definition of a violent felony that asks whether the crime "has *as an element* the use ... of physical force," the residual clause asks whether the crime "*involves conduct*" that presents too much risk of physical injury.

135 S.Ct. at 2557 (emphasis in original; second ellipsis in original; citation omitted). This approach "leaves grave uncertainty about how to estimate the risk posed by a crime." *Id.* It also "leaves uncertainty about how much risk it takes for a crime to qualify as a violent felony. It is one thing to apply an imprecise 'serious potential risk' standard to real-world facts; it is quite another to apply it to a judge-imagined abstraction." *Id.* at 2558. Thus, "[i]ncreasing a defendant's sentence under the clause denies due process of law." *Id.* at 2557.

■ These problems are inherent in the language used, not only in the language as it appears in the ACCA. Thus, the Supreme Court announced a substantive rule with respect to the language at issue. Given that, the Supreme Court's holding in *Welch* that *Johnson* applies retroactively satisfies § 2255(f)(3) with re-spect to any claim based on the same language at issue in *Johnson. See also United States v. Hawkins*, 2016 WL 3645154, at *5 (D. Neb. June 30, 2016) (finding *Johnson* to be substantively retroactive with respect to the Guidelines as much as the ACCA). Accordingly, Durete's § 2255 claim is proper at this time.

## C. Would Durete Have Received a Different Sentence?

Given that the Sentencing Guidelines are advisory, a question arises whether the undersigned, if presented with a properly calculated Guidelines sentencing range, would have imposed a 70-month sentence anyway.[11] The Court need not answer that question definitively at this stage. It is enough to state that the sentence ultimately imposed by the undersigned was based on an adjusted Guidelines calculation. (*See* Part I.A, *above.*) And more generally, "when a Guidelines range moves up or down, offenders' sentences move with it." *Peugh v. United States*, — U.S. —, 133 S.Ct. 2072, 2084, 186 L.Ed.2d 84 (2013). Thus, it is fairly probable that a correctly calculated Guidelines sentencing range would have prompted the undersigned to impose a shorter term of imprisonment. Durete is therefore entitled to § 2255 relief.

## III. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

---

**11.** Senior United States District Judge John L. Kane has denied a *Johnson*-inspired § 2255 petition because he found that he imposed the defendant's sentence based on considerations independent of the advisory Guidelines range. *See United States v. Kaimana*, No. 12-cr-0323-JLK, ECF No. 73 (D. Colo., filed Aug. 25, 2016). In addition, he has denied a *Johnson*-inspired § 2255 petition because, among other reasons, he previously found that the advisory Guidelines range was appropriate in light of the 18 U.S.C. § 3553(a) factors, and there was no suggestion that he would have imposed a lower sentence if the advisory Guidelines range had been lower. *See United States v. Taylor*, No. 13-cr-0400-JLK, ECF No. 58 (D. Colo., filed Aug. 25, 2016). *Taylor* also concludes that the rule announced in *Johnson* is not substantive with respect to the Guidelines.

1. Durete's Motion to Vacate Under [2]8 U.S.C. § 2255 (ECF No. 41) is GRANTED;

2. The Judgment in a Criminal Case dated October 14, 2014 (ECF No. 37) is VACATED;

3. A re-sentencing hearing is hereby SET for **October 6, 2016 at 9:30 a.m.** in Courtroom A801;

4. The Probation Office shall file a third addendum to the PSIR on or before **September 30, 2016.** This third addendum shall provide a Guidelines sentencing range calculation consistent with the holding above that Durete's Arapahoe County robbery conviction is not a "crime of violence" under § 4B1.2(a). The addendum shall also report any matter that is currently relevant regarding the new sentence that the Court will impose, including Durete's behavior in prison since his original sentencing.